No. 14,686.

MYERS ET AL. *v.* GRIFFITH.
(115 P. [2d] 397)

Decided June 30, 1941.

Mr. FRANK C. MYERS, Mr. JOHN S. FINE, for plaintiffs in error.

Mr. MORTIMER STONE, Mr. ALDEN T. HILL, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

SUIT by Griffith, defendant in error, plaintiff below, for rescission of a contract and the return to him of a note for $1,610.52 secured by deed of trust on real estate in Larimer county, on the grounds of fraud and failure of consideration. From a judgment in Griffith's favor plaintiffs in error prosecute this writ.

The record discloses that some time prior to the date of the contract—April 15, 1932—plaintiff in error Bastin had some interest in a patent (upon which there had been some alleged infringements), litigation concerning which had been pending in the federal courts. Plaintiff in error Frank C. Myers had been acting as attorney for Bastin for some time. J. W. Myers is the wife of Frank C. Myers and claims to be the present owner of the note and trust deed and a holder in due course.

The contract of which rescission is sought is in words and figures as follows:

"Received of John N. Griffith a subscription of Sixteen Hundred and Fifty Dollars ($1650.00) for the purchase price of eleven-fiftieths of one per cent. (11/50 of 1%) interest in all of the holdings of the Appliance Investment Company, including an eleven-fiftieths of one per cent (11/50 of 1%) of all moneys or property received from the Western Electric Company, or others, as the result of infringements on Patent No. 1,318,670, which is now owned by the Appliance Investment Company.

"It is understood that the capitalization of the Appliance Investment Company may be increased to, probably, Five Hundred Thousand (500,000) shares of the par value of One Dollar ($1) per share, and that when such increase occurs the above named purchaser shall receive for his interest he is now purchasing, an eleven-fiftieths of one per cent (11/50 of 1%) part of the entire capitalization of the Appliance Investment Company.

"Dated April 15th, 1932.

"John N. Griffith
Subscriber.
"L. A. Bastin
Owner and Seller."

While some of the assignments of error are directed to certain rulings of the trial court on preliminary matters, and assessment of costs occasioned by a continuance, these are not argued so we consider them as having been waived. Otherwise, the assignments are summarized by counsel for plaintiffs in error as follows:

"The case on review then resolves itself in the questions: 1. As to whether or not the defendant Bastin acquired the title and ownership of the note and deed of trust from the plaintiff; and 2. Whether or not the defendant Frank C. Myers became the holder for value in due course of said note, when he acquired the same

from the defendant Bastin, who there and then had the actual possession of said note, which then bore the endorsement of the plaintiff, upon payment to the said Bastin by check in the sum of Thirteen Hundred Fifty ($1350.00) Dollars therefor; and 3. Whether the defendant J. W. Myers became the holder for value in due course of said note upon the assignment and endorsement of the same to her by the said Frank C. Myers."

We shall consider these in order:

1. Bastin obtained no title to the note and deed of trust, because of the fraud and failure of consideration which the trial court found and which were specifically pleaded. No good purpose would be served by setting out all the misrepresentations made, but it definitely appears from the record that at the time the above contract was signed the face value of the 11/50 of 1% interest was only 33 cents, and the value of the stock actually owned by Bastin was only 10 cents; that, at the same time, the suit to establish the infringements on the patent had been lost in the Federal District Court of New York (affirmed in *Appliance Inv. Co. v. Western Electric Co.*, 61 F. (2d) 752). No stock was issued to Griffith until a short time before this action was instituted, and shortly thereafter Bastin was adjudicated a bankrupt. Bastin assured Griffith that the company had won the case in New York and that affirmance "by the Supreme Court" was just a matter of form, and that he (Griffith) would then be a wealthy man. We think the trial court's finding of failure of consideration is supported by competent evidence.

2. As to whether Frank Myers was a holder in due course can be readily determined by checking the circumstances surrounding his acquisition of the note and trust deed with the applicable provision of the Negotiable Instruments Act ('35 C.S.A., c. 112, §52, C.L. §3869). We quote only the fourth paragraph thereof: "That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in

the title of the person negotiating it." Section 56, chapter 112, '35 C.S.A., (C.L. §3873), reads: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, *or knowledge of such facts that his action in taking the instrument amounted to bad faith.* (Italics are ours.)

We agree with the trial court's finding that the evidence established at least that Myers had knowledge of such failure of consideration. The evidence is undisputed that he assisted Bastin in the preparation of his income tax schedule for 1931, which had to be filed before March 15, 1932. In the income tax schedule appears a statement that the company was not a going concern and had made no income for 1931. Relating to the bankruptcy schedules, Myers testified: "I made all of the statements that are in there." No attempt was made to collect the note for nearly four years, and then after it had been assigned to Mrs. Myers. The note was not listed among the liabilities set forth in the Bastin bankruptcy proceedings, although Bastin's name appears on it as an indorser. Bastin did not receive his discharge in bankruptcy in which Myers represented him. Meanwhile, Myers also knew that all of the assets of the company were mortgaged for over $4,000 and that the mortgage was in default. All these matters do not necessarily establish that the $1,350 was not paid, but they are sufficient to charge Myers with "knowledge of such facts that his action in taking the instrument amounted to bad faith." '35 C.S.A., c. 112, §56.

3. As to Mrs. Myers' alleged interest in the note, we simply accept her husband's analysis as stated in his brief, "she stepped into his shoes" when she obtained the note.

Judgment affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK and MR. JUSTICE OTTO BOCK dissent.